# In the United States Court of Federal Claims

No. 12-764C
(Filed December 27, 2012)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                    *
THE ALAMO TRAVEL GROUP, LP,         *     Pre-award bid protest; motion for a
                                    *     preliminary injunction; failure to
              Plaintiff,            *     consider past performance information;
                                    *     waiver; technically unacceptable proposal;
        v.                          *     no likelihood of success on the
                                    *     merits; FAR Part 12.
THE UNITED STATES,                  *
                                    *
              Defendant.            *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Barry Roberts*, Palm Beach Gardens, Florida, for plaintiff.

*John S. Groat*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Deborah A. Bynum*, Assistant Director, all of Washington, D.C., for defendant. *Heather J. LoPresti*, Associate General Counsel, Defense Human Resources Activity, of counsel.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

This bid protest is before the Court on the plaintiff's motion for a preliminary injunction. The plaintiff, Alamo Travel Group, LP ("Alamo"), requested that the Court enjoin the awarding of a contract concerning Travel Area 2 under Request for Proposals H98210-10-R006 ("Solicitation"). Alamo argued that the Defense Human Resources Activity's ("Agency") failure to look beyond the material contained in the technical section of its proposal was arbitrary, capricious, and in violation of the law because the Agency failed to give any consideration to Alamo's past performance. Specifically, the plaintiff contended that under the applicable statutes and regulations, no proposal in a competitive, negotiated procurement may be excluded from the competitive range before past performance is evaluated. The government opposed the motion for injunctive relief, arguing that plaintiff's case amounted to a challenge to terms of the Solicitation which, under applicable precedent, had been waived as a result of the plaintiff's failure to raise the issue prior to the deadline for submitting proposals. The defendant also disputed Alamo's interpretation of the variously-cited statutes and regulations.

For the reasons that follow, the Court has determined that plaintiff has waived any challenge to the evaluation approach contained in the Solicitation, and thus may not be granted injunctive relief on that basis.  While the Court need not reach the merits of such a challenge, in the alternative the Court finds that even if the objection to the Agency's failure to evaluate Alamo's past performance is considered, the plaintiff cannot succeed on that ground and thus is not entitled to injunctive relief.  Accordingly, the plaintiff's motion for a preliminary injunction is **DENIED.**

## I.  BACKGROUND

### A.  The Solicitation

The Solicitation was issued by the Agency on behalf of the Defense Travel Management Office ("the Travel Office") on March 14, 2011.  *See* App. to Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. ("Def.'s App.") at 21, 39.  The Travel Office is tasked with serving as the "single focal point for commercial travel" for the United States Department of Defense, and provides various services to this end, including oversight, customer support, and management services.  Def.'s App. at 39.  The Solicitation sought proposals for travel management services to be provided at a number of military installations, covering six travel areas.  Def.'s App. at 66; Compl. ¶ 1.  The Solicitation was a 100 percent small business set-aside on a competitive basis, *see* 15 U.S.C. § 644, and sought "travel management support services from contractors knowledgeable in the areas of travel authorization, reservation, ticketing, fulfillment, reporting and management, to support official travel activities of authorized DoD travelers."  Def.'s App. at 9.

The Solicitation provided detailed requirements as to the form and content of proposal submissions.  Offerors were instructed to separate their proposals into three volumes.  Def.'s App. at 66.  These three volumes were to be: 1) the business proposal; 2) the technical proposal / past performance; and 3) the price proposal.  Def.'s App. at 66-67.  For the price proposal, offerors were required to submit a price schedule and supporting documentation concerning the prices in the proposed schedule, such as labor categories for completing required tasks, labor rates, and proposed hours.  Def.'s App. at 67.   For the technical part of the technical / past performance volume, offerors were instructed to "address the technical requirements of the PWS and Evaluation Factors (See Attachment A)."  Def.'s App. at 66.  For the past performance part of that volume, offerors were instructed to provide past performance references, including contact information and contractual details.  Def.'s App. at 66-67.

Attachment A to the Solicitation provides various details concerning proposal requirements  and how these would be evaluated.  Three factors were to be considered in evaluating the proposals: technical, past performance, and price.  Def.'s App. at 90-92.  The technical factor was more important than past performance, and technical and past performance in combination were significantly more important than price.  Def.'s App. at 92.  The technical factor consisted of four elements: 1) technical approach and methodology; 2) management plan; 3) quality control; and 4) implementation/transition.  Def.'s App. at 90-91.  The Solicitation provided guidance as to how offerors should approach the discussion of each element in their proposals.  Under the technical approach and methodology element, the Solicitation required that offerors describe how they would accomplish travel management services in accordance with Performance Work Statement ("PWS") requirements, demonstrate understanding of such

requirements, and detail the resources to be applied for successful performance.  Def.'s App. at 90.  Under the management plan element, offerors had to provide a staffing plan to ensure successful completion of PWS requirements, including details such as proposed roles and continuing education of personnel; how surges in activity would be accommodated; and what disaster preparedness measures would be undertaken.  Def.'s App. at 90-91.  Among the PWS requirements was that "U.S. Government Transportation Requests (GTRs) shall be accepted in accordance with travel industry standards."  Def.'s App. at 40.  These GTRs are one of several forms of payment for transportation services discussed in the Solicitation.  *See* Def.'s App. at 38-39.

Solicitation Amendment 0006 ("Amendment") had an effective date of August 17, 2011.  Def.'s App. at 95.  For our purposes, the key provision of the Amendment stated that "[a]ny proposal with a Technical factor ranked as Unacceptable is ineligible for contract award, and will not be further evaluated."  Def.'s App. at 100.  The Amendment also included a thirty-five page limit on the technical proposal/past performance volume.  Def.'s App. at 98.  The deadline for submitting the final portion of offerors' proposals, the price proposal, remained August 24, 2011.  *Id.* at 95.

## B.  Agency Evaluations

Alamo, the incumbent contractor serving several of the installations covered by the Solicitation, submitted its technical proposal on April 3, 2011.  Compl. ¶¶ 1, 12.  The Agency determined that Alamo's proposal was unacceptable regarding Area 1, and notified Alamo of its exclusion from the competitive range for award concerning this area on or about June 6, 2012.  Compl. ¶ 13; *see also* Def.'s App. at 5.  On August 2, 2012, the plaintiff was informed by the Agency that its proposal concerning Area 2 was similarly found to be technically unacceptable, and thus Alamo was excluded from the competitive range for that area, as well.  Compl. ¶ 15.

In its Technical Review Summary concerning the Area 2 competition, the Agency noted that Alamo's proposal had three strengths and three weaknesses, and that "two of the weaknesses are considered significant."  Def.'s App. at 117.  The Agency thought the two significant weaknesses were that Alamo "has a flawed staffing approach and failed to acknowledge the acceptance of Government Transportation Requests."  Def.'s. App. 117.  As to the staffing approach, under the management plan element of the technical factor, the Agency found that Alamo had failed to provide "convincing detail" regarding its ability to provide the travel support services required with the staffing levels discussed in its proposal.  Def.'s App. at 117-118.  Alamo's staffing approach involved the use of one agent to support 16,016 transactions at one location, and two agents to support 26,730 transactions at another location.  Def.'s App. at 118.  The Agency found that "the Offeror does not provide the experience level of their staff, formula or methodology for determining their ratio of agents to the number of transactions . . . ."  Def.'s App. at 118.  Under the technical approach and methodology element of the technical factor, the Agency found that Alamo's failure to acknowledge acceptance of GTRs placed "the Government at risk for interruptions in travel services in the event that ticketing cannot be issued" by other means.  Def.'s App. at 118.  The Agency also noted, as a weakness of lesser significance, Alamo's apparent confusion between two types of travel service transactions, which the Agency categorized as a weakness under the technical approach and methodology element.  Def.'s App. at 118.

## C.  GAO Protests

Alamo brought two bid protests before the Government Accountability Office ("GAO") pertaining to this Solicitation.  *Alamo Travel Group, Inc.*, B-405007.11 2012 WL 4788539 (Comp. Gen. Sept. 26, 2012) ("Alamo I"); *Alamo Travel Group, Inc.*, B-405007.12 (Comp. Gen. Oct. 25, 2012) ("Alamo II") (reprinted in Def.'s App. at 1-3).  The present litigation concerns two of the six Travel Areas in the Solicitation --- Areas 1 and 2, respectively.  For Area 1, an award has already been made to Manassas Travel.  *Alamo I*, at *1.  Concerning Area 2, no award has yet been made.  Compl. ¶ 15.

The GAO issued a decision on Alamo's first bid protest regarding the Solicitation on September 26, 2012.  This protest addressed the award for Area 1.  *Alamo I*, at *1.  The GAO held that the Agency's evaluation of Alamo's proposal was proper.  Alamo asserted in its protest that part of its staffing analysis was contained in its pricing proposal and incorporated into the technical proposal by reference.  *Id.* at *3.  The GAO, however, found that allowing an offeror to satisfy the requirements of one evaluation factor by reference to other parts of the proposal, and thus enabling that offeror to exceed the page limitations, would have been improper.  *Id.*  The GAO also found that the Agency explained the rationale for its evaluation of Alamo's proposed staffing in the agency report, and that this rebutted the allegation of an unreasonable evaluation of the staffing plan.  *Alamo I*, at *4.  Finally, the GAO found that the protester's argument that the agency should have conducted discussions was unavailing, as an agency's decision not to initiate discussions was not a matter for the GAO to generally review.  *Alamo I*, at *4.

Subsequently, the GAO issued a decision on Alamo's second protest regarding the Solicitation on October 25, 2012, this time relating to Area 2.  The GAO ruled that Alamo had failed to provide a detailed statement of the factual and legal grounds for its protest, given that Alamo's contentions were the same as those raised in the prior protest, and that Alamo had failed to offer any reason why GAO's rationale in its prior decision as to Area 1 did not apply to Area 2.  *Alamo II*, Def.'s App. at 1-3.  Alamo also raised the issue of its exclusion from the competitive range without consideration of past performance.  Def.'s App. at 3.  The GAO found that the "RFP was unambiguous that a proposal evaluated as unacceptable under a technical factor was ineligible for contract award and would not be further evaluated," and that "Alamo's challenge to the terms of the solicitation in this regard, filed after the time set for receipt of proposals, is untimely."  Def.'s App. at 3.

## D.  The Motion Before the Court

Alamo filed a complaint in our Court on November 13, 2012, alleging that the Agency's failure to consider Alamo's past performance was arbitrary, capricious, and contrary to law. Compl. ¶ 18.  Alamo contends that the Agency erred in considering only the technical part of its proposal and in not also considering Alamo's past performance.  Compl. ¶ 3.  Alamo alleges that the Agency did not review the past performance information it is required to collect under Federal Acquisition Regulation ("FAR") section 42.1500 *et seq.*  Compl. ¶¶ 3, 6.  Alamo further argues that Congress, by enacting Section 1091 of the Federal Acquisition Streamlining Act of 1994, explicitly requires that offerors be afforded an opportunity to submit relevant information on past contract performance, and also requires that such information be considered in

competitive federal procurements.  Compl. ¶ 4.[1]  Alamo also alleges that the FAR section 15.304(c)(3)(i) requirement that past performance be evaluated in all source selections in the context of negotiated competitive acquisitions was violated by the Agency, as the procurement in dispute concerns a negotiated competitive acquisition.  Compl. ¶ 5.  Plaintiff infers from the language in FAR section 15.304(c)(3) that an agency lacks the ability to use an evaluation process which eliminates some offerors from the competitive range without considering their past performance information.  Pl.'s Reply Mem. in Supp. Prelim. Inj. ("Pl.'s Reply") at 4.

Alamo argues that since a major purpose of a technical evaluation is the determination of whether an offeror is capable of successfully performing a contract, Compl. ¶ 7 (citing 48 C.F.R. §§ 15.305(a), 15.305(a)(2)(ii)), the Agency should have collected and reviewed its past performance records, and considered the material it submitted in the past performance section of its proposal.  Compl. ¶¶ 8, 9.  According to Alamo, technical evaluations necessarily include a consideration of past performance, and not reviewing past performance is arbitrary and capricious.  Compl. ¶¶ 10, 11.  Alamo further explains that it did not file its protest upon the issuance of the Amendment to the Solicitation because it reasonably read the pertinent language to be consistent with its belief that the FAR requires technical evaluations to look at past performance.  Compl. ¶¶12, 16.  The plaintiff repeats or incorporates its allegations in its motion for a preliminary injunction, which seeks to prevent the Agency from making an award concerning Area 2.  *See* Mot. for Prelim. Inj. at 1-3.

The government argues that Alamo failed to object to the Solicitation in a timely manner and thus waived any right to consideration of its protest.  Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. ("Def.'s Opp'n") at 6.  Defendant relies on *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), for the proposition that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."  *Id.* at 1313; *see* Def.'s Opp'n at 7.  The defendant contends that the Amendment language --- stating that offerors with a technical factor rating of unacceptable are ineligible for an award and will receive no further evaluation --- gave notice that no past performance information would be considered in those circumstances.  *Id*. at 6-7. Defendant also argues that since 10 U.S.C. § 2305(a)(2)(A) and FAR section 15.304(d) mandate that the Agency follow the criteria set forth in the solicitation in evaluating proposals, Alamo's claim that the FAR required a different evaluation than was undertaken is without merit.  Def.'s Opp'n  at 8.

Defendant further argues that Alamo's reading of the statutes and implementing regulations under FAR Part 12 is incorrect, since the Federal Acquisition Streamlining Act required the adoption of policies and procedures to "encourage," not mandate, the consideration of the offeror's past performance in the selection of contracts.  Def.'s Opp'n 9.  Furthermore,

---

[1]  The complaint cites to 41 U.S.C. § 405(j); the language plaintiff cites is currently codified at 41 U.S.C. § 1126 (Supp. V 2011).

defendant notes the use of the word "should" in FAR section 12.206,[2] which, it contends, indicates that past performance reviews are not mandated in this type of procurement.  Def.'s Opp'n  at 9-10.

Defendant also argues that the equities weigh against Alamo's preliminary injunction request because: 1) Alamo unreasonably delayed in filing its protest at the GAO and the Court of Federal Claims, undermining its claim of irreparable harm; 2)  Alamo was on notice of the Amendment well before the final Solicitation deadline, but delayed raising any challenge to its plain language; and 3) Alamo's delay increased the harm the Government will suffer if Alamo is granted relief, due to the need to have to extend current contracts, along with increases in the prices of services.  Def.'s Opp'n at 12-14.  The motion was argued on December 17, 2012, and taken under submission.

## II.  DISCUSSION

### A.  Legal Standards

#### *1.  Bid Protest Jurisdiction*

This court has jurisdiction over bid protests under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, ("ADRA"),  Pub. L. No. 104–320, §§ 12(a)–(b), 110 Stat. 3870, 3874 (1996).  The Tucker Act states, in pertinent part, that our court has jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2006).

The Federal Circuit has held that challenges to the terms of a solicitation itself, as opposed to the evaluation of proposals responding to a solicitation, must occur prior to the deadline for receipt of proposals when these are based on alleged patent errors.  *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).  A party's failure to do so is a waiver of its ability to raise the same objection in a bid protest action in this court.  *Blue & Gold Fleet*, 492 F.3d at 1313.  Therefore, a preliminary question to address in considering plaintiff's protest is the nature of the challenge brought  --- in other words, whether the terms of the Solicitation itself, or the Agency evaluation of Alamo's proposal, is being challenged.

#### *2.  Preliminary Injunction*

Under Rule 56 of the Rules of the Court of Federal Claims ("RCFC") and 28 U.S.C. § 1491(b)(2), this court may issue a preliminary injunction.  In determining whether a preliminary injunction is appropriate relief, the court applies a four-part standard.  The plaintiff must show: 1) that it will suffer irreparable injury if the procurement is not enjoined; 2) that its claim has a reasonable likelihood of success on the merits; 3) that the harm it will suffer in the

---

[2]  The provision governing commercial items acquisitions states that "[p]ast performance should be an important element of every evaluation and contract award for commercial items."  48 C.F.R. § 12.206 (2011).

absence of an injunction outweighs the harm to the Government and to third parties; and 4) that granting injunctive relief serves the public interest. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *Chrysler Motors Corp. v. Auto Body Panels, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990); *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)*; Univ. Research Co. v. United States*, 65 Fed. Cl. 500, 504 (2005).  None of the four factors, individually, is dispositive; therefore, "the weakness of the showing regarding one factor may be overborne by the strength of the others."  *Chrysler Motors*, 908 F.2d at 953; *FMC Corp.*, 3 F.3d at 427.  The failure, however, to make "an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors" to deny injunctive relief.  *Chrysler Motors*, 908 F.2d at 953.  In any event, "[i]t appears clear  . . . that in a certain sense minimally satisfying the first two factors is necessary --- if a party either will suffer no amount of irreparable harm or has no chance of succeeding on the merits, an injunction will rarely, if ever, issue." *Magic Brite Janitorial v. United States*, 69 Fed. Cl. 319, 321 (2006) (citing *FMC Corp.*, 3 F.3d at 427); *cf. Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (holding in the patent context that likelihood of success on the merits and irreparable harm must be established before a preliminary injunction can issue).

### 3.  *Judicial Review of Administrative Decisions*

The ADRA amendments to the Tucker Act require our court to follow Administrative Procedure Act ("APA") standards of review in bid protests.  28 U.S.C. § 1491(b)(4).  Those standards, incorporated by reference, provide that a:

> reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be -- [¶] (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [¶] (B) contrary to constitutional right, power, privilege, or immunity; [¶] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [¶] (D) without observance of procedure required by law; [¶] (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or [¶] (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (2006).

Based on an apparent misreading of the legislative history, *see Gulf Grp., Inc. v. United States*, 61 Fed. Cl. 338, 350 n.25 (2004), the Supreme Court had determined, before the 1996 enactment of the ADRA, that the *de novo* review standard of 5 U.S.C. §706(2)(F) does not usually apply in review of informal agency decisions --- decisions, that is, such as are made in the course of a procurement.  *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) ("*Overton Park*").  Instead, courts in those cases are supposed to apply the standard of 5 U.S.C. §706(2)(A): whether the agency's acts were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See Overton Park*, 401 U.S. at 416 (citation omitted); *see also Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057

(Fed. Cir. 2000) (applying 5 U.S.C. §706(2)(A)).  *But see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001) ("*Domenico Garufi*") (also citing 5 U.S.C. §706(2)(D) as applicable in bid protests).

In applying this standard of review, the court must consider whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Overton Park*, 401 U.S. at 416.  When making this assessment, the court must keep in mind that this standard of review "is a narrow one," and that "[t]he court is not empowered to substitute its judgment for that of the agency."  *Id.*  The court will look to whether an agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action" and must not "supply a reasoned basis for the agency's action that the agency itself has not given."  *Motor Vehicle Mfrs. Ass'n of the United States, Inc., v. State Farm Mut. Auto. Ins.,* 463 U.S. 29, 43 (1983).

Under the "arbitrary and capricious" standard, a court must first look to whether a procurement official's decision lacked a rational basis.  *Domenico Garufi*, 238 F.3d at 1332 n. 5. Due to the deference courts give to discretionary procurement decisions, "the 'disappointed bidder bears a heavy burden of showing that the [procurement] decision had no rational basis.'" *Id.* at 1333 (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994)); *MORI Associates, Inc. v. United States*, 102 Fed. Cl. 503, 519 (2011).  "The presence (by the government) or absence (by the protester) of any rational basis for the agency decision must be demonstrated by a preponderance of the evidence."  *Gulf Grp, Inc. v. United States*, 61 Fed. Cl. 338, 351 (2004); *see Overstreet Elec. Co. v. United States*, 59 Fed. Cl. 99, 117 (2003); *Info. Tech. & Appl'ns Corp. v United States*, 51 Fed. Cl. 340, 346 (2001) (citing *GraphicData, LLC v. United States*, 37 Fed. Cl 771, 779 (1997)), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003).  Alternatively, a court can also look to whether a protester can show that "the procurement procedure involved a violation of regulation or procedure."  *Domenico Garufi*, 238 F.3d at 1332.  The showing must be of a "clear and prejudicial violation of applicable statutes or regulations."  *Id.* at 1333 (quoting *Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973).

## B. Analysis

### 1. Has Alamo Waived the Ground for Its Protest?

The Federal Circuit has held "that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in" our court.  *Blue & Gold Fleet*, 492 F.3d at 1313; *see also id.* at 1315.  In this case, the Agency issued an Amendment to the Solicitation on August 17, 2011, which read:  "Any proposal with a Technical factor ranked as Unacceptable is ineligible for contract award, and will not be further evaluated."  Def.'s App. at 100.  Although the technical proposal volumes, to which this procedure would apply, had already been submitted by offerors, the price proposals were not due until August 24, 2011.  *See id.* at 95, 97.

The unlawful action alleged by the plaintiff is its exclusion from the competitive range based solely on an "unacceptable" rating under the technical factor of the Solicitation, with no consideration of its past performance information.  *See* Compl. ¶¶ 2-11.  The plaintiff alleges that "[h]ad the Agency properly reviewed Alamo's record of past performance it would have found

that all of the purported deficiencies in the 'Technical' section had been addressed and that Alamo (as the incumbent contractor) is actually providing all of the services required by the Solicitation." *Id.* ¶ 9. In other words, it is complaining that the technical factor rating it received was based on the consideration of just its technical proposal. If, as Alamo contends, every offeror is entitled to a review of its past performance information, would not the language of the Amendment contain a patent error by providing for exclusion on the basis of the technical proposal evaluation alone?

Alamo argues that it is not challenging this term of the Solicitation, as it interpreted the language to mean that the technical factor evaluation would comply with applicable statutes and regulations, and thus would take into consideration past performance information. *See* Pl.'s Reply at 2-7. The plaintiff instead maintains that it is the manner in which the technical factor evaluation took place, and not the fact that it was excluded on that basis alone, that it challenges as unlawful. *See id.* at 6. Thus, it contends that the rule from *Blue & Gold Fleet* does not apply. *Id.* at 4-5.

The Court rejects Alamo's characterization of its challenge. The pertinent Amendment language states that "[a]ny proposal with a Technical factor ranked as Unacceptable is ineligible for award, and will not be further evaluated." Def.'s App. at 100. This sentence appears among the introductory paragraphs of the "Evaluation Factors" section of the Solicitation, which clearly identifies three distinct evaluation factors: Technical, Past Performance, and Price. *Id.* Thus, to "not be further evaluated" clearly indicates that an evaluation of past performance information might never occur if the evaluation of the technical factor results in the ranking of unacceptable. And while the Amendment did not expressly state that the technical evaluation would occur prior to the consideration of past performance, that is the only plausible interpretation of language stating that proposals failing to meet a threshold requirement as to one factor would not receive "further" evaluation.

The outcome is no better for Alamo even if one assumes that the protester is correct that statutes and regulations require that past performance information must be considered in all technical evaluations. The Solicitation treats past performance as distinct from the technical factor. *See* Def.'s App. at 90-92, 100-04. The technical factor has a different priority in evaluation than past performance. Def.'s App at 92, 103. The technical factor is broken up into various sub-elements, none of which reference past performance. Def.'s App. at 90-91, 101-02. It is therefore clear from the plain language of the Solicitation that the Agency was not incorporating an analysis of past performance into its technical factor analysis. Therefore, whatever may be of plaintiff's objection to an evaluation process in which an offeror could be excluded without consideration of its past performance information, the Court concludes that this objection has been waived. *See Blue & Gold Fleet*, 492 F.3d at 1313. The Amendment patently provided for this particular evaluation approach, and Alamo had one week from its issuance to object, before price proposals were to be submitted. With no valid protest ground, Alamo cannot obtain the injunctive relief it seeks.

### 2. *Is Every Offeror Entitled to a Past Performance Evaluation?*

Although Alamo's motion is denied because the protester waived the objection it asserts in this case, the Court, in the alternative, considers whether injunctive relief would have been proper absent this waiver. The Court concludes to the contrary, as the plaintiff has failed to

demonstrate any likelihood of success on its legal argument that every offeror is entitled to receive an evaluation of its past performance information, even if its proposal has otherwise been found unacceptable.  Alamo has not identified any statute or regulation that would have been violated by the Agency's failure to consider the protester's past performance information, much less one whose violation was *clear* under the applicable standard.  *See Domenico Garufi*, 238 F.3d at 1333.[3]

Looking first at the statutory basis for Alamo's argument, the plaintiff cites section 1091 of the Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, 108 Stat. 3272.  *See* Compl. ¶ 4; Pl.'s Reply at 3-4.  Alamo points to an uncodified finding of Congress  that "[p]ast performance of an offeror is one of the relevant factors that a contracting official of an executive agency should consider in awarding a contract."  *See* 41 U.S.C.A. § 1126 (historical and statutory notes).  But such a finding is far from binding, and calls for no more than consideration of past performance prior to award (rather than prior to exclusion from a competitive range).  Alamo also cites a requirement that the Administrator for Federal Procurement Policy "prescribe for executive agencies guidance regarding consideration of the past contract performance in awarding contracts," including "policies for ensuring that . . . the [past performance] information submitted by offerors is considered."  41 U.S.C. § 1126(a) (Supp. V 2011).  Whatever the force of such policies contained in guidance, this is a far cry from requiring that every agency consider the past performance information of every offeror submitting a proposal.

Turning next to the FAR, Alamo fares no better.  The plaintiff does not dispute that the subject procurement is one for commercial items under FAR Part 12.  *See* Def.'s App. at 9.  But in such procurements:

> [c]ontracting officers shall use the policies unique to the acquisition of commercial items prescribed in this part in conjunction with the policies and procedures for solicitation, evaluation and award prescribed in part 13, Simplified Acquisition Procedures; part 14, Sealed Bidding; or part 15, Contracting by Negotiation, as appropriate for the particular acquisition.

48 C.F.R. § 12.203 (2011).  As the government points out, *see* Def.'s Opp'n at 9-10, this FAR part uses non-mandatory language concerning the evaluation of past performance, providing: "Past performance *should* be an important element of every evaluation and contract award for commercial items." 48 C.F.R. § 12.206 (2011) (emphasis added).  The definitions in FAR section 2.101, which have a uniform meaning throughout the FAR unless otherwise specified, draw a sharp line in usage between "shall" and "should."  While "[s]hall denotes the imperative," "[s]hould means an expected course of action or policy that is to be followed unless inappropriate for a particular circumstance." 48 C.F.R. § 2.101 (2011).  Thus, even if other portions of the FAR would seem to mandate the evaluation of past performance for all offerors, this "unique" policy regarding commercial items would provide a measure of discretion to the contracting officials.

---

[3]  The Court also doubts whether prejudice may rest on mere allegations, *see* Compl. ¶ 9, rather than on some documented evidence, such as past performance information that contradicts the technical factor evaluation findings.

The Court does not, however, find that the FAR provisions cited by the plaintiff require past performance to be evaluated for every single offeror submitting a proposal. Section 15.304(c)(3) states that, subject to a rather large exception, "past performance shall be evaluated in all source selections for negotiated competitive acquisitions expected to exceed the simplified acquisition threshold." C.F.R. 48 § 15.304(c)(3)(i) (2011).[4] But to say that a factor must be evaluated in a source selection is not the same thing as requiring that it be evaluated for all offerors, and nothing in this provision precludes federal agencies from using an approach that weeds out offerors under other non-cost factors before past performance is considered.

As the government notes, *see* Def.'s Opp'n at 11, although FAR section 15.304(c) also provides that "[p]rice or cost to the Government shall be evaluated in every source selection," 48 C.F.R. § 15.304(c)(1) (2011), the GAO has consistently found that an agency can exclude a technically unacceptable proposal from the competitive range without considering price. *Ocean Services, LLC* , B-406087.2, 2012 CPD ¶ 62, 2012 WL 423603 at *4 (Comp. Gen. Feb. 2, 2012) (citations omitted); *see also TMC Design Corporation*, B-296194.3, 2012 CPD ¶ 158, 2005 WL 2108084 at *4 (Comp. Gen. Aug. 10 2005). This has also been recognized by our court. *Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303, 338 (2000) (explaining that "an agency may not exclude a *technically acceptable* proposal from the competitive range without taking into account the relative cost of that proposal to the government" (emphasis added)) (citing *Meridian Management Corp.*, B-285127, 2000 CPD ¶ 121, 2000 WL 1097129 at *3 (July 19, 2000)); *Femme Comp Inc., v. United States*, 83 Fed. Cl. 704, 731 (2008). Although, unlike the past performance factor, *see* 48 C.F.R. § 15.304(c)(3)(iii), price must be considered without exception when an award is made, it need not be considered for proposals that are technically unacceptable. It is difficult to see how the less mandatory language of section 15.304(c)(3)  could impose a greater obligation on agencies than that imposed under section 15.304(c)(1), and indeed, no authority has been offered to support such a proposition. The FAR does not appear to contain any impediment to an agency's restricting past performance evaluations to offerors who have met some other non-cost factor threshold, such as suitably explaining how the requirements of a contract would be met.

Alamo also cites to the statement that "[p]ast performance information is one indicator of an offeror's ability to perform the contract successfully." 48 C.F.R § 15.305(a)(2)(i) (2011); *see* Compl. ¶ 7. But this hardly means that it must be considered for all offerors, including those who have not acceptably promised to meet the contract requirements. If an evaluation of a technical proposal reveals that an offeror is not promising to acceptably meet all requirements, there is no need to consider whether it has met past promises. The plaintiff also cites to various provisions of FAR section 42.1500 *et. seq.*, and in particular FAR section 42.1503, which specifies various details in the procedures that must be employed by agencies in evaluating the performance of their contractors. Compl. ¶¶ 3, 6, 8. The Court fails to see how these regulations support plaintiff's argument that past performance review is necessary in the present instance. Alamo has not shown that the Agency's failure to evaluate its past performance information before excluding it from the competitive range has clearly violated any applicable statute or regulation. With no likelihood of success on the merits, the Court need not consider the other

---

[4]  The exception is that "[p]ast performance need not be evaluated if the contracting officer documents the reason past performance is not an appropriate evaluation factor for the acquisition." 48 C.F.R. § 15.304(c)(3)(iii) (2011).

factors for injunctive relief.  *See Magic Brite Janitorial*, 69 Fed. Cl. at 321.  The plaintiff's motion for a preliminary injunction is **DENIED**.

### III.  CONCLUSION

The Court has found that the plaintiff's objection to the government's failure to consider its past performance information is a challenge to a patent error in the terms of a solicitation. This objection was not raised by Alamo before the final deadline for submitting a portion of its proposal, and thus has been waived.  Even were it not waived, the plaintiff has not identified any statute or regulation that was clearly violated by the government's actions.  For the reasons stated above, with no likelihood of success on the merits established, the plaintiff's motion for a preliminary injunction is **DENIED**.


**IT IS SO ORDERED.**




s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge